UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 11-09-GWU

JULIE M. WATTS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

11-09 Julie M. Watts

    3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

    4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

    5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984); <u>Walters v. Commissioner of Social Security</u>, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

11-09   Julie M. Watts

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Id</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Julie Mae Watts, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of hypertensive heart disease, chronic obstructive pulmonary disease (COPD), and kidney disease.  (Tr. 33).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Watts retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled

11-09  Julie M. Watts

to benefits.  (Tr. 36-41).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE a series of hypothetical questions.  Ultimately, he asked whether a person of the plaintiff's age of 46, high school education, and work experience as an assembler and paint mixer could perform any jobs if she could lift 20 pounds occasionally and 15 pounds frequently, could stand and walk six hours out of an eight-hour day (no more than 30 minutes at a time), and sit six hours in an eight-hour day (no more than 30 minutes at a time), and also had the following non-exertional limitations.  (Tr. 67-69).  She:  (1) could never kneel or crawl; (2) could occasionally climb, balance, and stoop; (3) could frequently balance; (4) could push and pull 15 pounds occasionally and 10 pounds frequently; (5) needed to avoid hazards such as machinery, temperature extremes, chemicals, dust, and fumes; and (6) would be absent from work one day a month.  (Id.).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 69-70).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there was an error of law.

Mrs. Watts alleged disability beginning November 1, 2007 due to heart failure and chronic kidney disease.  (Tr. 143).  Medical records show that she was

6

complaining of shortness of breath, chest pain, and edema, and a cardiac catheterization in October, 2007 showed evidence of pulmonary hypertension. (Tr. 282-83). She eventually had mitral valve replacement in January, 2008. (Tr. 359-61). As early as 2006, she had been diagnosed with chronic kidney disease, renal insufficiency, and proteinuria (Tr. 210-12). Her treating nephrologist, Dr. Rizwan Akhtar, reported that her specific condition was focal and segmental glomerulosclerosis (FSGS) but she was significantly better on steroids. (Tr. 379).

In terms of functional restrictions, advanced registered nurse practitioners (ARNP) Larry Hubbs and Paula Elliott, from the offices of the plaintiff's treating family physician (see, e.g., Tr. 249-51, 255), completed insurance forms early in 2008, shortly after the mitral valve replacement surgery, indicating that the plaintiff was unable to do any work for an indefinite period. (Tr. 583, 585, 590-92). Hubbs also indicated that her condition would be reevaluated monthly and her condition was expected to improve. (Tr. 583, 585). Dr. Akhtar completed insurance forms on January 31, 2008, which did indicate that the plaintiff was "disabled for any occupation," but he added that she was recovering from her open-heart surgery, and limitations needed to be "set up by heart doctor." (Tr. 586-7, 589). He stated that from a "kidney standpoint," his specialty, the plaintiff did not need restrictions. (Tr. 589).

Dr. Terri Postma conducted a consultative examination of the plaintiff on July 8, 2008, at which time the plaintiff reported that there had been a marked improvement of her symptoms since the mitral valve replacement surgery and she could now walk 650 feet without becoming short of breath, although she had some occasional discomfort due to the surgery and hardware. (Tr. 438). Dr. Postma's examination was largely normal, apart from a slightly elevated blood pressure and a mechanical click from the replacement heart valve. (Tr. 439-40). There was no physical evidence of congestive heart failure, and Mrs. Watts was not short of breath during the examination. (Tr. 440). Dr. Postma found no evidence for physical restrictions. (Id.).

A state agency physician, Dr. John Gedmark, reviewed the evidence as of October 29, 2008 and concluded that Mrs. Watts could perform "light" level exertion, along with the need to avoid concentrated exposure to extreme cold, heat, and pulmonary irritants. (Tr. 575-81). These restrictions are consistent with the ALJ's hypothetical question, although the ALJ added additional limitations. The ALJ stated in his opinion that he gave some weight to the non-examining opinion. (Tr. 38). He apparently ascribed the disability form completed by Larry Hubbs to the plaintiff's treating cardiologist, Dr. Asad Jadoon, but concluded that it should be given little weight in light of "medical improvement and the duration factor." (Tr. 39). He also stated that it was inconsistent with the other evidence of record, the

claimant's fairly extensive activities of daily living, and, in any case, an opinion of total disability was "reserved to the Commissioner." (Id.).

The plaintiff raises three objections on appeal.

First, the plaintiff notes that the ALJ and her counsel were on the record as discussing adding an additional document to the file as Exhibit 17F (Tr. 48) but it was not included in the record or considered by the ALJ. The plaintiff has submitted the proposed exhibit, which does appear to have been faxed on the day of the hearing. Docket Entry #11-1. It is a document headed "Medical Statement Regarding Chronic Renal Disease for Social Security Disability Claim," completed by Dr. Akhtar on October 26, 2009. The form indicates that the plaintiff has fatigue, dyspnea, muscular twitches and muscle cramps. Next to a section asking the source to indicate how long the plaintiff could stand and sit at one time, lift occasionally and frequently, and the number of hours she could work per day, Dr. Akhtar wrote "tests not able + to be perform." He summarized her condition as having FSGS but with no signs of end-stage renal disease ("ESRD"), along with shortness of breath from primary cardiac issues. He concluded: "For more information get medical records."

The plaintiff suggests that this document shows that she was in such poor condition that she was not able to complete a functional capacity evaluation, but it is not clear whether Dr. Akhtar meant that. His comment could also be interpreted

9

as indicating that he could not or did not perform such testing.  Moreover, he had previously indicated, as described above, that she had no limitations from her kidney disease, and that her cardiologist should be consulted for her restrictions due to her heart condition.  Under the circumstances, even if the court found "good cause" for failing to submit the evidence, its materiality is doubtful since it would be unlikely to change the outcome of the case.  <u>Cline v. Commissioner of Social Security</u>, 96 F.3d 146, 148-9 (6th Cir. 1996).  Therefore, the requirements for a remand under Sentence Six of 42 U.S.C. § 405(g) have not been met.

Second, the plaintiff argues that the ALJ did not provide a proper rationale for rejecting the opinions of her treating physicians, Drs. Jadoon and Akhtar.  As previously noted, the court agrees with the defendant that the forms ascribed to Dr. Jadoon by the plaintiff and the ALJ were actually completed by the registered nurse practitioner Larry Hubbs.  A registered nurse practitioner is not an acceptable medical source under 20 C.F.R. §§ 404.1513; 416.913.  As also previously noted, the forms were unadorned disability opinions which reach a vocational conclusion, not a medical conclusion, and as such have no binding effect.  20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2).  Finally, the opinion of Dr. Akhtar clearly stated that the plaintiff had no limitations due to her kidney condition.  Thus, the plaintiff's second argument is also unavailing.

11-09  Julie M. Watts

Finally, the plaintiff correctly notes that the ALJ's functional capacity assessment as set out in his opinion (Tr. 36-37) omits any limitation on sitting. However, the actual hypothetical question (Tr. 67-69) does include a sitting limitation to no more than 30 minutes at a time. No treating, examining, or non-examining medical source indicated that there would be greater restrictions on sitting, and the plaintiff herself testified somewhat imprecisely that she could sit between 20 and 30 minutes before she would need to get up. (Tr. 54-55). The sitting limitation in a hypothetical question is clearly supported by substantial evidence. Therefore, there would be no useful purpose served in remanding the case merely to correct the formal omission of a sitting limitation in the decision.

The decision will be affirmed.

This the 30th day of December, 2011.

Signed By:
<u>G. Wix Unthank</u>
**United States Senior Judge**